UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

HAROLD H.,[1]

                Plaintiff,

      v.                                                           23-CV-6148-LJV
                                                                        DECISION & ORDER
COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.

_____

On March 8, 2023, the plaintiff, Harold H. ("Harold"), brought this action under the Social Security Act ("the Act").  Docket Item 1.  He seeks review of the determination by the Commissioner of Social Security ("Commissioner") that he was not disabled.[2]  *Id.* On July 7, 2023, Harold moved for judgment on the pleadings, Docket Item 8; on August 7, 2023, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 9; and on August 21, 2023, Harold replied, Docket Item 10.

_____

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial.  Standing Order, Identification of Non-Government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] Harold applied for Supplemental Security Income ("SSI"), which is paid to a person with a disability who also demonstrates financial need.  42 U.S.C. § 1382(a).  A qualified individual may receive both Disability Insurance Benefits ("DIB") and SSI, and the Social Security Administration uses the same five-step evaluation process to determine eligibility for both programs.  *See* 20 C.F.R. §§ 404.1520(a)(4) (concerning DIB), 416.920(a)(4) (concerning SSI).

For the reasons that follow, this Court grants Harold's motion in part and denies the Commissioner's cross-motion.[3]

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).  The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination."  *Id*.  This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).  Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'"  *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts only if a reasonable fact finder would *have to conclude otherwise*."  *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citation omitted) (emphasis in original); *see McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to

---

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

more than one rational interpretation, the Commissioner's conclusion must be upheld."). But "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have his or her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

### I.   THE ALJ'S DECISION

On June 8, 2021, the ALJ found that Harold had not been under a disability since filing his protective application for SSI on January 8, 2020.   *See* Docket Item 5 at 28. The ALJ's decision was based on the five-step sequential evaluation process under 20 C.F.R. §§ 404.1520(a), and 416.920(a).   *See id.* at 19-27.

At step one, the ALJ found that Harold had not engaged in substantial gainful activity since applying for benefits on January 8, 2020.   *Id.* at 19.   At step two, the ALJ found that Harold suffered from two severe, medically determinable impairments: "degenerative disc disease with bulging disc and asthma."   *Id.* at 20.

At step three, the ALJ found that Harold's severe, medically determinable impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.   *See id.* at 21.   More specifically, the ALJ found that Harold's physical impairments did not meet or medically equal listing 1.15 (disorders of the skeletal spine resulting in a compromise of a nerve root), 1.16 (lumbar spinal stenosis resulting in compromise of the cauda equine), and 3.03 (asthma).   *Id.*

The ALJ then found that Harold had the residual functional capacity ("RFC")[4] to "perform light work as defined in 20 C.F.R. 416.967(b)"[5] except that "[he] can lift and/or carry up to fifteen pounds occasionally and would need to change positions between sitting and standing every thirty minutes." *Id.*

At step four, the ALJ found that Harold had no past relevant work. *Id.* at 27. But given Harold's age, education, and RFC, the ALJ found at step five that Harold could perform substantial gainful activity as a price marker, collator operator, and document preparer. *Id.* at 27-28; *see Dictionary of Occupational Titles* 209.587-034, 1991 WL 671802 (Jan. 1, 2016); *id.* at 208.685-010, 1991 WL 671753; *id.* at 249.587-018, 1991 WL 672349. Therefore, the ALJ found that Harold had not been under a disability or entitled to SSI since his application was filed on January 8, 2020. *Id.* at 29.

## II.  ALLEGATIONS

Harold raises one argument: that the ALJ erred in including a highly specific limitation in the RFC—that Harold would need to change between sitting and standing every thirty minutes—without medical support. Docket Item 8 at 8. This Court agrees

---

[4] A claimant's RFC is the most he "can still do despite [his] limitations . . . in an ordinary work setting on a regular and continuing basis." *Melville v. Apfel,* 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at *2 (Jul. 2, 1996)). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.*

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job it in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." 20 C.F.R. § 416.967(b).

that the ALJ erred and, because that error was to Harold's prejudice, remands the

matter to the Commissioner.

## III.   ANALYSIS

An ALJ must "weigh all of the evidence available to make an RFC finding that [is]

consistent with the record as a whole."  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir.

2013) (summary order); *accord Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022).  But

that does not mean that the RFC needs to "perfectly correspond with any of the

opinions of medical sources cited in [the ALJ's] decision," *Matta*, 508 F. App'x at 56, or

even be based on opinion evidence, *see Corbiere v. Berryhill*, 760 F. App'x 54, 56 (2d

Cir. 2019) (summary order).  As long as the ALJ considers all the medical evidence and

appropriately analyzes the medical opinions, an RFC consistent with the record is not

error.  *See* 20 C.F.R. §§ 404.1545, 416.945; *see also Cichocki v. Astrue*, 729 F.3d 172,

177 (2d Cir. 2013) (holding that remand is not necessary "[w]here an ALJ's analysis at

Step Four regarding a claimant's functional limitations and restrictions affords an

adequate basis for meaningful judicial review, applies the proper legal standards, and is

supported by substantial evidence").

For claims filed after March 27, 2017, such as Harold's, the ALJ evaluates

medical opinion evidence under the framework in 20 C.F.R. § 416.920c.  *See* Revisions

to Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg.

5844-01, 5844, 5875 (Jan. 18, 2017).  Under the new regulations, the ALJ will consider

opinions from a claimant's medical sources but "will not defer or give any specific

evidentiary weight, including controlling weight, to any medical opinion[s]."  20 C.F.R. §

416.920c(a).  Instead, the ALJ "will articulate in [his or her] determination or decision

how persuasive [he or she] find[s] all of the medical opinions" in light of all of the regulatory factors.  *Id.* § 416.920c(b), (c)(1)-(5).

If an ALJ includes a "highly specific" limitation in the claimant's RFC, however, that limitation cannot come from whole cloth.  *See Tomicki v. Berryhill,* 2018 WL 703118, at *5 (W.D.N.Y. Jan. 15, 2018).  In other words, the ALJ cannot choose specific limitations that are less restrictive than those about which a medical professional has opined unless such limitations find support somewhere in the medical record.  *See Balsamo v. Chater,* 142 F.3d 75, 81 (2d Cir. 1998).  So when there is no record support for a specific RFC finding about the amount of time that a claimant can sit or stand without relief and that RFC finding is less restrictive than the opinion of a medical provider, the RFC is not supported by substantial evidence.  *See e.g., Tomicki,* 2018 WL 703118, at *5 ("[T]he record does not support the ALJ's conclusion that [the claimant] needs to briefly switch between sitting and standing only every thirty minutes. The ALJ did not cite any evidence to support this highly-specific sit-stand option . . .. Moreover, there is evidence in the record indicating that [the claimant] needs to change positions every few minutes, not every thirty minutes."); *see also Mariani v. Colvin,* 567 F. App'x 8, 10 (2d Cir. 2014) (summary order) (RFC to perform manipulation/fingering fifty percent of the time during a workday was not supported by substantial evidence). That is precisely the case here.

In formulating the RFC, the ALJ addressed the opinions of Harold's treating orthopedic physician, Clifford Everett, M.D.  *See* Docket Item 5 at 25-26.  As the ALJ noted, *see id.,* Dr. Everett opined that Harold had "issues with prolonged sitting, driving, repetitive lifting and bending," and "would have a necessitating for change in position or

sit to stand [sic] as needed."  Docket Item 5 at 565-66, 2132, 2136, 2154 2284, 2289, 2312.  The ALJ found Dr. Everett's opinions to be "partially persuasive to the extent they are consistent with, and supported by, the claimant's longitudinal treatment records."  Docket Item 5 at 26.  In fact, the ALJ noted that Dr. Everett's limitation about Harold's "needing to change positions/avoid prolonged sitting" was "consistent with and supported by the claimant's treatment records when considering the claimant's subjective pain complaints."  *Id.*

Other opinion evidence mirrored Dr. Everett's.  For example, Rochelle Barone, PA, opined that Harold would need to alternate sitting and standing as tolerated.  *Id.* at 583, 1254, 1274, 1544, 1550, 1568, 1632, 1638, 1658, 1986, 1988, 2018.  No provider offered any opinion to the contrary.  And when asked how long he was able to sit at one time, Harold said that he had to move about every five to ten minutes.  *Id.* at 56; *see also id.* at 305, 1818, 1856 (Harold's self-reporting that he could tolerate "sitting up to fifteen minutes.").

So several providers noted that Harold needed to "alternate sitting and standing as tolerated."  *Id.* at 290, 583, 1254, 1275, 1544, 1550, 1568, 1633, 1638, 1658, 1986, 1988, 1992, 2018, 2401, 2405, 2416.  Harold himself said that he had to change position every five or ten or fifteen minutes.  *Id.* at 56, 305, 1818, 1856.  And nothing in the record suggests that Harold would need to alternate between sitting and standing only every thirty minutes.

Nevertheless, the ALJ found that Harold "would need to shift between sitting and standing positions every thirty minutes to alleviate pain and discomfort."  *Id.* at 24; *see also id.* at 21.  In reaching that conclusion, the ALJ found that the "record does not

7

objectively or clinically support any greater frequency in [Harold's] need to change positions." *Id.* at 24. And in support of that finding, the ALJ cited "the relatively mild objective/clinical findings noted in [Harold's] treatment record which are not consistent with the alleged 8-9/10 in intensity pain [that Harold] alleges in his statements and testimony." *Id.*

But the ALJ did not explain why he found that Harold would need to change position every thirty minutes, as opposed to, say, twenty or forty-five. What is more, no provider opinion, treatment notes, or self-report even suggests a need to change position every thirty minutes; in fact, the providers agreed that Harold might need to change position more frequently than that. So the ALJ necessarily created that limitation from whole cloth. And because the ALJ is not a medical provider, he was not qualified to make that highly specific finding.

This Court addressed the very issue presented here in *Tomicki v. Berryhill,* 2018 WL 703118 (W.D.N.Y. 2018). In *Tomicki,* "evidence in the record indicat[ed] that [the plaintiff] need[ed] to change positions every few minutes, not every thirty minutes as the ALJ concluded." 2018 WL 703118, at *5. Likewise, the plaintiff in Tomicki reported that she needed to change positions more frequently than the ALJ found, and treatment notes in the record supported that report. *Tomicki,* 2018 WL 703118, at *5. So just as remand was required in *Tomicki,* the similar facts and identical RFC finding here likewise require remand.[6] *See also Cosnyka v. Colvin,* 576 F. App'x 43, 46 (2d Cir.

---

[6] In finding that the record did not support the ALJ's conclusion that Tomicki needed to switch between sitting and standing every thirty minutes, the court pointed to three pieces of evidence parallel to the evidence in this case: first, Tomicki's testimony that she would need to switch between sitting and standing every ten minutes; second, Tomicki's statement to a physician that she needed to change positions every five

2014) (summary order) ("Because there is no substantial evidence for the ALJ's six-minute per hour formulation, and this formulation was crucial to the vocational expert's conclusion that there were jobs [the plaintiff] could perform, we cannot uphold the ALJ's decision to reject [his] claim for benefits.").

The Commissioner argues that "[g]iven the range estimate by [Harold] and the . . . evidence favoring the higher end of the range, the [thirty]-minute sit-stand interval is supported by substantial evidence in the record." *See* Docket Item 8 at 18.  But there is nothing in the record supporting that conclusory assertion.  Indeed, the citations upon which the Commissioner relies do not even mention a thirty-minute sit-stand interval and actually support more restrictive limitations.  *See id.* (citing Docket Item 5 at 289 (noting that Harold could return to work but needed to "[a]lternate sitting and standing as tolerated"), *id.* at 576 (treatment notes documenting that Harold "continues to have significant lower back pain" and "issues [with] . . . prolonged sitting"), *id.* at 2132 (ambulatory encounter notes finding that Harold had "limitations on his ability to sit for prolonged periods of time . . . necessitating [a] change in position or sit and stand as needed"), *id.* at 2284 (same), and *id.* at 2418 (noting that "patient needs to change position as needed" and "stand/sit as tolerated").

The Commissioner also cites evidence in the record about Harold's conservative treatment and Harold's ability to perform other activities, such as walking for certain periods of time.  *See* Docket Item 9 at 9-11, 17-19.  But none of that supports the ALJ's

---

minutes while sitting or standing; and third, the repeated opinion of Tomicki's treating physician that sitting and standing aggravates her pain.  *See Tomicki,* 2018 WL 703118, at *5.

highly specific RFC determination that Harold would need to change positions only every thirty minutes.

What is more, the ALJ's error here was not harmless.  As in *Tomicki,* "the vocational expert relied upon [the ALJ's unsupported RFC determination] in opining that [the plaintiff] can perform other work."  2018 WL 703118, at *5. More specifically, the ALJ explicitly asked the vocational expert whether work would be available for Harold if he needed to change position "let's say every half hour."  Docket Item 5 at 51.  And the ALJ noted in his decision that "[p]er the testimony of impartial vocational expert Christine Spaulding, the numbers of jobs provided for these representative occupations have been reduced by 50% to account for the effect of the claimant's need to shift positions between sitting and standing every thirty minutes."  *Id.* at 28.  So the unsupported assumption that Harold would need to change position only every thirty minutes unquestionably influenced the vocational expert's conclusion.  And because there must be "substantial evidence to support the assumption upon which the vocational expert based [her] opinion," *see Dumas v. Schweiker,* 712 F.2d 1545, 1554 (2d Cir. 1983), the error here was not harmless.

Finally, it is not clear to the Court how the ALJ was able to glean from the medical data or the opinions that Harold would need to shift between sitting and standing every thirty minutes.  And without a "tether" between the specific limitation and the medical record, *Jordan v. Berryhill,* 2018 WL 5993366, at *3 (W.D.N.Y. Nov. 15, 2018), this Court cannot perform its required meaningful review of the ALJ's decision. *See Craft v. Astrue,* 539 F.3d 995, 1002 (7th Cir. 2004) (an ALJ "must provide an 'accurate and logical bridge' between the evidence and the conclusion that the claimant

10

is not disabled, so that '. . . a reviewing court . . . may assess the validity of the agency's ultimate findings and afford [the] claimant meaningful judicial review.'"); *see also Laura C. v. Comm'r of Soc. Sec.,* 529 F. Supp. 3d 64, 71 (W.D.N.Y 2021) (meaningful judicial review was precluded where the court was left to speculate as to the ALJ's reasoning). So for that reason as well, remand is required.

In sum, the ALJ erred in formulating a specific RFC limitation that finds no support in the record, and that error was not harmless. On remand, the ALJ must fashion an RFC that is based on evidence in the record and not on his own surmise. *See Tara W. v. Comm'r of Soc. Sec.,* 2021 WL 4316824 at *4 (W.D.N.Y. Sept. 23, 2021).

## **CONCLUSION**

The Commissioner's motion for judgment on the pleadings, Docket Item 9, is DENIED, and Harold's motion for judgment on the pleadings, Docket Item 8, is GRANTED in part and DENIED in part.  The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.


        SO ORDERED.

Dated:        July 1, 2024
              Buffalo, New York


                                        *Lawrence J. Vilardo*
                                        LAWRENCE J. VILARDO
                                        UNITED STATES DISTRICT JUDGE